THE STATE OF KANSAS, *Appellee,* v. FRANK SCHNECK, *Appellant.*

No. 17,155.

SYLLABUS BY THE COURT.

1. CONTINUANCE—*Discretion of Court—No Abuse of.* Continuances are largely within the discretion of the trial court, and only when it appears that this discretion has been abused in disallowing the application will a judgment be reversed therefor.

2. EVIDENCE—*New Trial—No Prejudicial Error in Court's Rulings.* Alleged trial errors considered and held not sufficient to require a reversal of the judgment.

Appeal from Franklin district court. Opinion filed July 7, 1911. Affirmed.

*R. E. Melvin,* and *W. J. Costigan,* for the appellant.

*John S. Dawson,* attorney-general, *S. N. Hawkes,* assistant attorney-general, *W. B. Pleasant,* county attorney, *Edward T. Riling,* and *Walter Pleasant,* for the appellee.

The opinion of the court was delivered by

SMITH, J.: The appellant, Frank Schneck, and Mollie Stewart were charged jointly with murder in the first degree. They were separately tried and each was convicted of the highest degree of murder. Each appealed from the verdict and sentence in the re-

spective cases.   In *The State v. Stewart,* post, a fuller
statement of the facts may be found.

The first assignment of error is that the court erred
in refusing a continuance of the case.   It is strongly in-
sisted as one of the grounds of continuance that the
defendant could not have a fair trial in Franklin
county on account of the excitement of the people gen-
erally and prejudice against the defendant.   As the
trial was had about fourteen months after the alleged
killing this does not appear to be a strong ground for
continuance; this claim would more aptly apply in an
application for change of venue.   No such application
was made.   There is a showing, however, that two
witnesses who at the time of the trial, and for some
time prior thereto, lived in Oklahoma, were material
witnesses for the defendant and that an unavailing
attempt had been made to procure their depositions;
that the defendant had been in jail for a considerable
length of time before the trial and had no means to
employ others to look up and secure evidence for him.

The theory of the defense in the trial was that Jane
Schneck inflicted the wound which caused her own
death and that these two witnesses had from time to
time heard her make threats to take her life.

It is said in *The State v. Hagan,* 22 Kan. 490, that
one who is in jail and without means to procure others
to hunt up and obtain evidence in his behalf is in
a different situation from one who is out on bail and is
able to go in search of testimony, and if he uses reason-
able diligence in such circumstances and there is a
probability of obtaining the evidence it is error to re-
fuse a continuance.   In so grave a charge every reason-
able opportunity ought to be given the accused to pre-
pare and present his defense, yet the showing seems to
have failed to convince the trial court either that
reasonable diligence had been used or that there was
a probability of obtaining the evidence.   The matter
of granting or refusing a continuance is largely within

the discretion of the court, and we can not say from the showing made that it abused its discretion in this respect.

Again, it is alleged that the court erred in admitting evidence over the appellant's objection. Particular stress is laid upon the evidence of Dr. Herr, who was examined as an expert, and was asked what, in his opinion, was the cause of the woman's death. He said, "I believe it was homicide." Asked to explain what he meant by "homicide" he said, "I believe it was a murder." One Dr. Roller had testified to the extent and appearance of the wound, and testified that the throat was cut, and described the wound. The question was, "Now, from the testimony of Dr. Roller, considering the testimony of Dr. Roller and of Dr. Kennedy, what is your opinion as to the cause of this woman's death?" It is contended that the question should have also included an assumption that the evidence of Dr. Roller and Dr. Kennedy was true and thereon asked, "What, in your opinion, is the cause of Jane Schneck's death?" Of course, the proper question would have been, after laying the proper foundation, "What is your opinion as to whether the wound was inflicted by Jane Schneck herself or by another?" The two theories, however, were repeatedly stated to the jury in the progress of the trial. It was plainly a case of suicide or murder by some one and we do not think that, while the language seems harsh, the jury was misled. Numerous other objections are assigned to the evidence, but the court thinks there is no substantial error committed therein and nothing which calls for extended discussion.

Again, it is contended that the court erred in ruling out evidence offered by the defendant, and particularly the question asked expert physicians as to what the presumption is when a person is found with his throat cut, whether it is suicide or homicide. We do not believe this is a question for expert testimony. The

same may be said of the efforts to allow appellant to prove by the experts that the worries of a wife over an errant husband promote suicidal tendencies and homicidal tendencies as to her children. Also that the court refused to allow appellant to make a physical demonstration before the jury that a knife, found under the body of Jane Schneck, would cut a chunk of raw beef. The texture of beef and the tissues of a person's throat are different and all other conditions are so different that it seems the experiment would not have aided the jury in determining whether the wounds could have been inflicted with the knife.

Again, it is urged that the court erred in making improper comments on the evidence, criticizing the conduct of the appellant and manifesting impatience towards counsel for appellant. Something might be said on this question, and something also on the conduct of counsel toward the court, but it is improbable that these exchanges had any prejudicial effect upon the jury as to the appellant's rights.

Again, it is urged that the court refused, on request of appellant, to have his codefendent, Mollie Stewart, present in court during the examination of her two children and her husband. The defendant had a right to be confronted with the witnesses, but Mollie Stewart was not on trial in this action. While her presence may or may not have had some influence upon the testimony of her children and husband, the defendant on trial had no legal right to her presence.

Also, it is said that the court erred in admitting evidence as to acts and words of Mollie Stewart and expressions made by her, not in the presence of appellant and after the death of Jane Schneck. Some of this evidence seems rather questionable, yet it is not such as we can say prejudiced the defendant in the case.

It is also urged that the court erred in allowing the introduction and display before the jury of a butcher's

22—85 KAN.

large skinning knife, which knife was, subsequent to its display, shown not to have been used or connected at all with the killing. There was testimony that a knife of the same make and in every respect similar was missing from a butcher shop, after Mollie Stewart and two other women had been in the shop, and that a knife answering the general description had afterwards, and before the killing, been seen in the Stewart home. The theory of the state was that the crime had been committed with the missing knife. The description given by the witness of the knife and the sight of the one exhibited was, perhaps, calculated to arouse the feelings and excite the imaginations of the jury, but not more so than the evidence that the fatal wounds had been inflicted with some sharp instrument like a knife. A majority of the court thinks this was not prejudicial error.

Several other objections are made which seem to the court to be not well taken and that no discussion thereof is required.

The last and most serious error assigned is the overruling of the motion of the appellant for a new trial. Upon this question the court is divided, and the ground of division seems to be on the effect of all the evidence as produced. The evidence is all circumstantial, and it is contended on the one side that the weight of the evidence is more strongly in favor of the theory of the defense—that Jane Schneck came to her death by suicide—and on the other that she came to her death by the malicious, culpable and premeditated act of the appellant and his codefendant. The weight of the evidence is, in the first instance, for the determination of the jury, and, in the second, for the trial court. A majority of this court, giving weight to the verdict of the jury and the approval of the verdict by the trial court, are in favor of approving the verdict and sentence of the court.

The judgment is affirmed.

PORTER, J. (dissenting) : The circumstances under which the bodies of the wife and children of John Schneck were found indicate to my mind that the injured wife took the lives of her children and then killed herself. From the evidence offered by the state it seems extremely improbable that any person entered or left the house during the night. There is nothing in the evidence or circumstances of the case indicating a motive for the crime charged either as to Frank Schneck or as to Mrs. Stewart. Schneck's wife and children had never interfered with and furnished no obstacle to the continuance of the relations existing between Schneck and Mrs. Stewart. The entire evidence leaves so much doubt as to the defendant's guilt that a new trial should be ordered.

Mr. Justice Smith and Mr. Justice West concur in this dissent.